UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. SI4:06CR766SNL(MLM) |
| ) | |
| TIMOTHY WHALEY, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

On 6/18/07 this case came before the court for an Evidentiary Hearing on defendant's Motion to Suppress Physical Evidence. [Doc. 49] The government responded to the Motion in writing. [Doc. 50]

At the Evidentiary Hearing the government presented the testimony of Detective Stephen Slama. Defendant did not present evidence. Based on the testimony and evidence adduced and having had an opportunity to observe the demeanor and evaluate the credibility of the witness, the undersigned makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

Det. Slama is presently assigned to the Crime Suppression Unit. On 10/23/06 he was assigned to the South Patrol Detective Bureau Street Team which is charged mainly with the investigation of street crimes.

A confidential source ("CS") who had proved reliable in the past, told Det. Slama that a black male named "Tim" would be at the 7-Eleven at the intersection of Chippewa and Brannon on 10/23/06 at approximately 11:00 P.M. and would have a large amount of marijuana. The CS said "Tim" would be driving a black Ford Mustang with tinted windows. Det. Slama was familiar with the neighborhood and knew there was much drug activity and prostitution in the area.

At about 5-10 minutes to 11:00 P.M. Det. Slama and his partner, Officer Brian Conlin, set up surveillance. They were in an unmarked Chevrolet Impala and they were in full uniform. Other officers were in the vicinity.

At approximately 11:00 P.M. they observed a black Mustang with tinted windows pull on to the 7-Eleven lot at 5200 Chippewa. The vehicle parked and the driver exited and looked into the store. He looked all about the lot. He appeared to be trying to locate someone. The driver returned to the black Mustang and left the lot. He turned right on Brannon going southbound. Lighting in this area is excellent and Det. Slama was able to see there was no one else other than the driver in the vehicle.

The officers followed the black Mustang and at approximately 4321 Brannon it pulled over to the curb. This was not in response to any action by the officers. They had not activated their police lights or siren at that time. When the black Mustang stopped, they pulled behind it and at that time they activated their red emergency lights.

Det. Slama approached the driver's side of the vehicle. The driver's side window was open. Det. Slama identified himself as a police officer. The driver said "I know who you are" and slammed on the gas and drove away. Det. Slama yelled for him to stop but he continued. Det. Slama returned to his vehicle and he and Officer Conlin followed the black Mustang.

As the driver was proceeding south on Brannon he put his arm out the driver's side window and dropped a handgun to the ground. He continued to evade the officers and eventually escaped and was not apprehended at that time.

Det. Slama radioed the other officers in the vicinity and they recovered a .32 caliber pistol from the street where the driver had dropped it. It was loaded with one round in the chamber and four rounds in the magazine. It was then taken to the laboratory.

Det. Slama had observed the license plate on the black Mustang and "ran it." The car was registered to Tichelle Cole. A Department of Revenue check on Tichelle Cole showed that she also used the name "Cole Whaley." The officers put the names "Tim" and "Whaley" in the EPIC system

which is a data base which shows arrests and has photographs. In that way Det. Slama obtained a photograph of Timothy Whaley (defendant) which he identified as the person who dropped the gun and evaded the officers on 10/23/06. He also learned there was an order of protection against him placed by Tichelle Cole Whaley and a fugitive warrant from the Pagedale Police Department. Det. Slama placed an additional "wanted" for defendant for Unlawful Use of a Weapon, Possession of a Defaced Firearm and Resisting Arrest. He also placed a "wanted" for the black Mustang.[1]

On 12/10/06 defendant was in the custody of the Brentwood Police Department and was transferred to the South Patrol Division where Det. Slama and Det. Rob Ernst contacted defendant. Det. Slama observed defendant and found that he did not appear to be under the influence of drugs nor to be suffering from any mental condition. Det. Slama advised defendant of the charges against him, specifically Unlawful Use of a Weapon, Possession of a Defaced Firearm and Resisting Arrest. He advised defendant of his <u>Miranda</u> Rights and defendant exercised his Rights and did not make a statement.

An attorney contacted Det. Ernst and told him she had previously been retained to represent defendant and that he did not want to make statements. Defendant said he wanted to call his wife Tichelle and he gave her address as 6069 Chippewa and her phone number.

Later on 12/10/06, the officers followed up on the address in order to locate the black Mustang. The address given by defendant, 6069 Chippewa, was invalid. They continued up and down Chippewa and located the black Mustang in the rear of 6967 Chippewa. It had the same license plate, 208-PJY, which Det. Slama had observed on 10/23/06 when defendant eluded the police. See photo, Gov.Ex.3.

They responded to the front of 6967 Chippewa where they located Tichelle Whaley in Apt. 1E. They told her of the investigation and she indicated she did not know the car was wanted.

---

[1] At the Evidentiary Hearing the government introduced photographs and a map of the area of the 7-Eleven, Gov.Ex.1 and 1A, and defendant's EPIC photo and an enlargement of the photo, Gov.Ex.2 and 2A.

Without hesitation she allowed the officer to enter the apartment. There were several small children present but no other adults. She appeared in control of the property. The officers told her her husband was the subject of an investigation and she indicated that she and her husband are the only two people who drive the black Mustang. The officers gave her a Warning and Waiver form. She was in her own home and was not in custody..

The form reads as follows:

I have been informed by [Det. Stephen Slama] of the St. Louis Metropolitan Police Department that he/she wants to question me about [UUW] of which I am accused or suspected. He/she has also informed me of my rights.

I understand that I have the right to remain silent and that any statement I make may be used as evidence against me in a criminal trial.

I understand that I have the right to consult with counsel and that I have the right to have counsel present with me during questioning. I may retain counsel at my own expense or counsel will be appointed for me at no expense to me.

I understand that even if I consent to being questioned now without counsel present, I may stop answering questions at any time. Also, I may request counsel at any time during questioning.

I have read and understand all these rights. I voluntarily waive the rights and desire to make a statement.

The officers reviewed each of the rights with Tichelle Whaley and she initialed each of the rights to indicate that she understood. She signed it "Tichelle Whaley" and wrote: I [Tichelle Whaley] want to make the following statement: [From time to time rarely, Timothy drives my car. I do not own any fire arms none should been in vehicle, only people should drive car is me & my husband.]

The form continues:

I [Tichelle Whaley] have read or have had read to me the statement which begins on page [1] and ends on page [1]. I fully understand the contents of this entire statement made my me. The statement is true. I have initialed all corrections and have signed the bottom of each page containing the statement. I have made this statement clearly without hope of reward or benefit, without threat of punishment, and without coercion, unlawful influence or unlawful inducement. Gov.Ex.4[2]

---

[2] The bracketed words are hand written.

The officers asked Ms. Whaley if there were any weapons or contraband in the apartment or car and she said no. They asked if they could search the apartment and the car and presented her with a Consent to Search form. She reviewed it and said she understood and signed it. The form specifically says:

> I understand I have the right to refuse to consent to the search described above and to refuse to sign this form.
> I further state that no promises, threats, force or physical or mental coercion of any kind whatsoever have been used against me to get me to consent to the search described above or to sign this form. Gov.Ex.5.

In addition, Det. Slama testified no threats or promises were made to induce her to sign the form.[3] She appeared in her right mind and not under the influence of drugs or alcohol. She said she was concerned about weapons because there were children present. She did not hesitate at all to sign the Consent form which occurred not more than 6-7 minutes from the officers' initial contact with her. The officers were not aware that she was on federal probation.

During a search of the apartment, the officers located in the master bedroom closet a box of 35 rounds of .32 caliber Winchester ammunition, a bag of marijuana seeds and a scale. They asked Ms. Whaley if she knew about the ammunition and drugs and she said no and that she "could not believe he was into this." They also located some marijuana on top of the stereo in the living room. In addition they located and seized an Ameren UE statement in defendant's name for 6967 Chippewa, Apt. 1E.

On 12/20/06 defendant and his then attorney, Ms. Stormy White, appeared in the U. S. Attorney's Office with Det. Ernst for a proffer with AUSA Patrick Judge. Gov.Ex.9 is a letter from AUSA Judge which he and Ms. White used at the beginning of the proffer to explain the terms and conditions of the proffer to defendant. Ms. White specifically told defendant that anything he said could be used against him at trial.

---

[3] The government introduced as Gov.Ex.7 and 8 a docket sheet and Judgment in a Criminal Case, Case No. 4:06CR160RWS, USA v. Tichelle Cole Whaley, Misuse of a Social Security Account Number, for the purpose of proving Ms. Whaley's familiarity with the criminal justice system.

Defendant began to make admissions regarding 10/23/06: he admitted he possessed the firearm and that he threw it and a bag of marijuana out of the black Mustang. Then, his demeanor changed, he became hostile and the proffer was terminated.

Dets. Ernest and Slama conveyed defendant back downstairs to the United States Marshals Service. On the elevator the officers said nothing. Defendant said "I know you guys. I know your names. I still got connections on the outside. Are you going to beat me up? Beat me up!" The officers believed defendant was clearly trying to antagonize them.

It is to be noted that when Det. Slama observed the black Mustang on the parking pad behind 6967 Chippewa, there was a Chrysler Sebring there as well. Det. Slama contacted the the Brentwood Police Department and learned defendant was in the Chrysler Sebring when he was arrested on 12/10/06.

## CONCLUSIONS OF LAW

1.  **.32 Caliber Semi-automatic Pistol**

After defendant drove away from the 7-Eleven and as he was evading the police, Det. Slama saw him drop a firearm out of the driver's side window. Other officers seized the weapon.

Warrantless searches and seizures of abandoned property do not violate the Fourth Amendment. United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994). Whether a person intends to abandon property may be inferred from words spoken, acts done and other objective facts, and all relevant circumstances at the time of alleged abandonment should be considered. United States v. Hoey, 983 F.2d 890, 892 (8th Cir. 1993). The issue is not abandonment in the strict property right sense, but rather, whether the defendant in leaving the property has relinquished a reasonable expectation of privacy so that a search and seizure is valid. Id. Abel v. United States, 362 U.S. 217, 241 (1960); United States v. Ruiz, 935 F.2d 982, 984-85 (8th Cir. 1991).

In determining whether property has been abandoned for Fourth Amendment purposes, a court is to look to the totality of the circumstances, noting in particular two factors: whether the

suspect denied ownership of the property and whether he physically relinquished the property. See United State v. Landry, 154 F.3d 897, 899 (8th Cir. 1998). Here there is no question that defendant physically relinquished the gun when he dropped it out the window. He made no effort to stop and claim ownership of the gun. He abandoned the gun and therefore its seizure does not violate the Four Amendment. The .32 caliber semi-automatic pistol should not be suppressed.

**2.     Search of 6967 Chippewa**

Dets. Slama and Ernst asked defendant's wife if they could search the apartment at 6967 Chippewa.[4] She unhesitatingly consented and signed the Consent to Search form as more fully set out in the Findings of Fact above.

The Supreme Court has held that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." Alderman v. United States, 394 U.S. 165, 174 (1969). A defendant may raise a Fourth Amendment objection to a search only if that particular defendant's Fourth Amendment rights were allegedly violated. United States v. Payne, 119 F.3d 637, 641 (8th Cir.), cert. denied, 522 U.S. 987 (1997); see also United States v. Padilla, 508 U.S. 77, 81 (1993). The Eighth Circuit looks to five factors in determining whether a defendant has a reasonable expectation of privacy: 1) ownership, possession, or control of the area searched; 2) ability to regulate access to the area; 3) the totality of the circumstances surrounding the search; 4) whether the suspect had a subjective expectation of privacy in the area; and 5) whether that subjective expectation of privacy was objectively reasonable. United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994). The defendant carries the burden of demonstrating a reasonable expectation of privacy in the area. Id.

It is not clear from the evidence adduced at the Hearing that defendant met his burden of demonstrating his reasonable expectation of privacy in the apartment. Assuming *arguendo* for the

---

[4]     A defendant has standing to challenge the admission of evidence only if his own Constitutional rights have been violated. United States v. Padilla, 508 U.S. 77, 81 (1993); United States v. Salvucci, 448 U.S. 83, 86-87 (1980). Therefore, there is no question that defendant lacks standing to challenge Tichelle Whaley's written and oral statements.

- 7 -

purposes of this R&R only, that he does in fact meet the five-factor Gomez test, his wife voluntarily consented to a search of the apartment and thus the evidence seized should not be suppressed.

Persons may give up their Fourth Amendment rights by consenting to a search. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). Such consent must be given freely and voluntarily. Id. In determining whether a consent to search was given freely and voluntarily, the court must examine the totality of the circumstances under which it is given. United States v. Mendenhall, 446 U.S. 544, 557 (1980); United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990); United States v. Lee, 886 F.2d 998, 1000 (8th Cir. 1989), cert. denied, 493 U.S. 1032 (1990).

Consent to search may be given by the criminal suspect or by some other person who has common authority over or other significant relationship to the premises or effects sought to be inspected. United States v. Matlock, 415 U.S. 164, 171 (1974); United States v. Adams, 346 F.3d 1165, 1170-71 (8th Cir. 2003); United States v. Czeck, 105 F.3d 1235, 1239 (8th Cir. 1997); United States v. Bradley, 869 F.2d 417, 419 (8th Cir. 1989). "Common authority is a function of mutual use, joint access and control." United States v. Janis, 387 F.3d 682, 686 (8th Cir. 2004) quoting United States v. James, 353 F.3d 606, 613 (8th Cir. 2003) "[A]n adult co-occupant of a residence may consent to a search." United States v. Jones, 193 F.3d 948, 950 (8th Cir. 1999). In the present case, Tichelle Whaley resided in the apartment as defendant's wife and shared the bedroom with him. Her car was parked in the rear. She had actual authority to consent to the search.

Even if the district court should not find that she had actual authority to consent, she clearly had apparent authority. A search may be valid when based on the consent of a party whom the police reasonably believe to have authority to consent to the search even if it is later determined that the party did not in fact have such authority. Illinois v. Rodriguez, 497 U.S. 177, 185-186 (1990).

"The rule for law enforcement officers' reliance on a consenting party's apparent authority 'is not that they always be correct but that they always be reasonable.'" United States v. Janis, 387 F.3d 682, 686 (8th Cir. 2004) quoting United States v. James, 353 F.3d 606, 613 (8th Cir. 2003). If the police, at the time of entry, reasonably believe a third party

**possesses common authority over the premises and consents, a warrantless search is valid. Janis, 387 F.3d at 686. If the facts available would have justified a reasonable officer in the belief that the consenting party had authority over the premises, a third party consent is valid. United States v. Adams, 346 F.3d 1165, 1170 (8th Cir. 2003). Here, Tichelle Whaley was defendant's wife, her car was parked in the rear and the officers clearly and reasonably believed that under these circumstances she had authority to consent.**

**The only remaining question is the voluntariness of her consent. A consent is voluntary if it is "the product of an essentially free and unconstrained choice by its maker," Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973), rather than "the product of duress or coercion, express or implied." Id. at 227. The defendant's awareness of the right to refuse is not necessary for a consent to be voluntary. Id. at 234-35; United States v. Heath, 58 F.3d 1271, 1275-76 (8th Cir.) (prosecution need not prove defendant was fully aware of rights under Fourth Amendment in order to establish voluntariness of consent), cert. denied, 516 U.S. 892, 116 S.Ct. 240 (1995); United States v. Barahona, 990 F.2d 412, 417 (8th Cir. 1993); United States v. Boyer, 988 F.2d 56, 57 (8th Cir. 1993) (defendant's lack of knowledge that he could withhold consent does not invalidate search); United States v. Chaidez, 906 F.2d 377, 380 (8th Cir. 1990). Further, the voluntariness of a consent is a question of fact to be determined from the totality of the circumstances. Bustamonte, 412 U.S. at 277.**

**"In assessing voluntariness courts look both to the characteristics of the accused and the details of the environment." United States v. Miller, 20 F.3d 926, 930 (8th Cir.), cert. denied, 513 U.S. 886, 115 S.Ct. 226 (1994). The following are relevant to this determination:**

> **The age of the defendant; his general intelligence and education; whether he was under the influence of a mind-altering substance; whether he was informed of his right to withhold consent or of his Miranda rights; the length of time he was detained and questioned; whether he was threatened, physically intimidated, or punished by the police; whether he relied upon promises or misrepresentations made by the police; whether he was in a public or secluded location; and whether he objected to the search or passively looked on. Chaidez, 906 F.2d at 381 (citations omitted).**

United States v. Barahona, 990 F.2d at 417; United States v. Armstrong, 16 F.3d 289, 295 (8th Cir. 1994). The factors are not to be mechanically applied but rather are "valuable as a guide to analysis." Chaidez, 906 F.2d at 381. The form Mrs. Whaley read and signed specifically said she did not have to consent and that no threats or promises were made to induce her to consent. There is no evidence of coercion or that her will was overborne in any way. She was familiar with law enforcement procedures from her previous involvement with the criminal justice system. She did not appear under the influence of drugs or alcohol. She signed the form only 6-7 minutes after the initial contact and she was in her own home. She was 28 years old and seemed to understand the nature of the officers' questions. Applying the Chaidez factors, the consent of Tichelle Whaley was voluntary. The items found during the search of 6967 Chippewa, Apt. 1E should not be suppressed.

**3.     Defendant's Statement**

Although not covered by defendant's Motion to Suppress Physical Evidence the court will briefly address defendant's statements.

Defendant was specifically told by his lawyer that anything he said during the proffer could be used against him. He was with his lawyer when he made his admissions. These statements should not be suppressed.

When defendant was in the elevator being returned to the United States Marshals Service, he made statements to Dets. Slama and Ernst. They were not in response to any questioning by the detectives. They were spontaneous statements and did not require the advice of Miranda Rights. In fact, "the Supreme court in Miranda expressly stated that '[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admission is not affected by our holding today.'" United States v. Butzin, 886 F.2d 1016, 1018 (8th Cir. 1989) quoting Miranda v. Arizona, 384 U.S. 436, 478 (1966). Defendant's statements should not be suppressed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant's Motion to Suppress Physical Evidence be **DENIED**. [Doc. 49]

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
**MARY ANN L. MEDLER**
**UNITED STATES MAGISTRATE JUDGE**

**Dated this   27th   day of June, 2007.**